R.N., A Minor, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2578.

Court of Appeals of Alaska.

March 17, 1989.

---

James M. Hackett, Fairbanks, for appellant.

Scott Davis, Asst. Atty. Gen., Fairbanks, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Based on admissions of conduct which would be criminal if committed by an adult, R.N. was adjudicated a delinquent minor pursuant to AS 47.10.080(b)(1). The sole issue on appeal concerns the trial court's decision to institutionalize R.N. in a juvenile detention facility. R.N. argues that the court failed to consider less restrictive alternatives, including group homes or residential settings. We affirm.

The state filed a petition for adjudication of delinquency against R.N. on February 26, 1988, charging him with burglary in the second degree, a class C felony. At the time, R.N. was residing with his mother in Fairbanks. He was taken into custody on February 25 and released to his mother on February 26, pending disposition. At a hearing on April 22, 1988, the parties reached an agreement on R.N.'s case. R.N. agreed to assist the state in solving a number of burglaries, to pay restitution, and to abide by the same conditions of conduct that he agreed to when he was released to the custody of his mother on February 26, 1988. The state agreed to recommend that the minor be placed on supervised probation and remain in his mother's custody. The state also agreed to file no subsequent counts with the court regarding other burglaries occurring on or before March 1, 1988. Finally, the state agreed that all referrals to juvenile intake concerning the minor would be covered in the predisposition report for consideration by the trial court.

R.N. apparently met most of the terms and conditions of the agreement. However, on May 18, 1988, he was arrested and detained on charges of burglary in the second degree, theft in the second degree, and criminal mischief in the third degree. These charges involved conduct occurring after the disposition agreement was reached between R.N. and the state. On June 7, 1988, R.N. admitted the conduct constituting the burglary and theft charges, acknowledging that he entered the building in question and took property. The criminal mischief charge was dismissed.

At the consolidated disposition hearing on both of R.N.'s cases, R.N.'s counsel argued that there were less restrictive alternatives to R.N.'s institutionalization. The trial court disagreed and concluded as follows:

Based on [R.N.'s] admissions in [these cases], the court adjudicates him a delinquent minor. He's placed in the legal custody of the Department of Health of [sic] Social Services for a period of time not to exceed his 19th birthday. Court will order that he be placed in an appropriate correctional—or detention facility as determined to be appropriate by the department.... Court finds under the circumstances of this case that a [sic] order of placement and detention at correctional facility is appropriate in light of [R.N.'s] conduct and the court notes that he was in court originally; committed a

number of burglaries; was released to his mother; while on release after he'd admitted the petition in this case and agreement had been made, he got in substantial other additional difficulty. Court notes that the damage is in excess of $12,000.00 in connection with the amount of damage that was caused. The court does not find that a less restrictive alternative such as a foster home or group home would be appropriate and, therefore, that's the reason for the detention order.

Thereafter, the court entered written findings and an order of adjudication and disposition of delinquent minor, which provided in relevant part:

1. [R.N.] was left in his mother's supervision, subject to agreed upon conditions of conduct, pending disposition [of the first case].

2. Neither [R.N.] nor this [sic] mother was able to prevent him from engaging in further criminal behavior.

3. [R.N.'s] deteriorating conduct while under his mother's supervision, the high level of damages caused by the criminal behavior he participated in, and his repeat offenses demonstrate that less restrictive alternatives would not be successful placement or treatment alternatives for [R.N.]

4. It would be contrary to [R.N.'s] welfare to continue in his mother's custody at this time.

5. R.N.'s use of drugs and alcohol indicates that he needs counseling for these addictions.

6. The least restrictive alternative placement in which [R.N.'s] treatment needs can properly be addressed, while the public is also protected, is a juvenile correctional facility.

7. By the time [R.N.] has completed his treatment program in the juvenile facility, he is likely to be 18 and ready to work toward independent living.

8. [R.N.'s] appropriate share of the restitution owed is the sum of his 1988 and 1989 Permanent Fund Dividends.

R.N. argues that the trial court gave insufficient attention to less restrictive alternatives to institutionalization. Relevant to this issue are two recent decisions of this court: *In re J.H.*, 758 P.2d 1287 (Alaska App.1988), and *R.P. v. State*, 718 P.2d 168 (Alaska App.1986). In those cases, we held that a trial judge should not institutionalize a delinquent minor in the absence of evidence that institutionalization is the least restrictive alternative available and is necessary for the minor's rehabilitation and the community's protection. In reaching these conclusions, we relied heavily on the standards promulgated by the American Bar Association. We note that the Alaska Supreme Court has recently adopted rules governing delinquency proceedings largely incorporating these standards. *See* Alaska Delinquency Rule 11(e) (in order to support a particular disposition, the Department must prove by a preponderance of the evidence that the disposition is the least restrictive alternative appropriate to the needs of the juvenile and the protection of the community); Alaska Delinquency Rule 23(c) (requiring explicit findings of fact by the trial court).

It is true that the prehearing report does not set out in detail a summary of those noninstitutional placements available to R.N. in Fairbanks. The prehearing report concluded that R.N. would not function effectively in foster care or in a group home. This conclusion was based, in part, on R.N.'s statements that he would refuse to stay in such a home. During the hearing, however, R.N. testified that the probation officer had misunderstood him. R.N. claimed that he was only saying he would run away if such a placement had been imposed before his disposition (while he was still in the custody of his mother). He stressed that he would much prefer a group home to a detention facility. Nevertheless, the trial court could consider

R.N.'s statement to the probation officer in determining how effective group placement would be for R.N.'s rehabilitation.

Given R.N.'s age at the time of the disposition proceeding (seventeen and one-half), the roughly one and one-half years remaining for supervision before he becomes an adult, and his continuing criminal behavior even after entering into a favorable disposition agreement with the state, we are not convinced that the trial court was clearly erroneous in concluding that institutional placement was the least restrictive alternative available to treat R.N.'s delinquency and to protect the community.

The judgment of the superior court is AFFIRMED.